# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| The Episcopal Church in South Carolina, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Church Insurance Company of Vermont ) <br> and The Church Insurance Company, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No.: 2:13-cv-02475-PMD <br><br> **ORDER** |

This matter is before the Court upon motions to dismiss filed by Defendant Church Insurance Company of Vermont ("CIC-VT") and Defendant The Church Insurance Company ("CIC"), and upon Plaintiff The Episcopal Church in South Carolina's ("Plaintiff" or "TEC-SC") Motion for Summary Judgment. For the reasons that follow, the Court grants CIC's Motion to Dismiss, denies CIC-VT's Motion to Dismiss, and grants in part and denies in part Plaintiff's Motion for Summary Judgment.

## BACKGROUND

This case arises out of a state court action pending in the Court of Common Pleas for the First Judicial Circuit in Dorchester County, South Carolina, Case No. 2013-CP-18-00013 ("Underlying Action"). The Underlying Action was filed by The Protestant Episcopal Church in the Diocese of South Carolina along with multiple break-away churches (collectively, "the

1

Diocese") against The Episcopal Church a/k/a The Protestant Episcopal Church in the United States of America ("TEC") and Plaintiff TEC-SC.[1]

The Underlying Action arises from a purported doctrinal dispute between the Diocese, TEC, and Plaintiff TEC-SC. Although the Diocese disassociated from TEC, the Diocese continued to use the same intellectual, real, and personal property it had used prior to the split. Plaintiff and TEC also continued to use the same intellectual property, namely trade names, trademarks, services, and emblems. Accordingly, in order to clarify the ownership of the real, personal, and intellectual property, the Diocese filed the Underlying Action seeking a declaration from the state court that the Diocese's existence and its continued use of the disputed property were proper. The Diocese also sought an order enjoining Plaintiff and TEC from their continued use of the same property. The second amended complaint filed by the Diocese in the Underlying Action contains 505 numbered paragraphs and 101 pages and states three causes of action: (1) declaratory judgment concerning the Diocese's interest in real and personal property; (2) injunctive relief concerning the alleged infringement of the Diocese's service marks; and (3) injunctive relief concerning the alleged improper use of the Diocese's names, styles, and emblems.

Effective as of January 1, 2013, TEC-SC has been insured by Policy No. VPP0012879 ("Policy"), which was issued by CIC-VT. In addition to other types of coverage, the Policy provides Commercial Liability Coverage, which specifically provides coverage for "Advertising Injury Liability" under Coverage P:

> **We** pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **personal injury** or **advertising injury** to which this insurance applies.

---

[1] Plaintiff TEC-SC is recognized by The Episcopal Church in the United States as the Protestant Episcopal Diocese of South Carolina. However, Plaintiff is doing business under the name TEC-SC for the purpose of complying with a temporary injunction ordered by the state court.

> 1. **We** cover: . . . **advertising injury** arising out of an offense committed in the course of advertising **your** goods, products, or services. 2. The **personal injury** or **advertising injury** offense must be committed: a. within the **coverage territory**; and b. during the policy period.[2]

Commercial Liability Coverage 5, ECF 1-1 at 75 of 120. The Policy defines "**advertising injury**" to mean, in pertinent part: "injury (other than **bodily injury**, **property damage**, or **personal injury**) arising out of one or more of the following offenses: . . . b. misappropriation of advertising ideas or style of doing business" or "c. infringement of copyright, title, slogan, trademark, or trade name." *Id.* at 2. The Policy defines "**damages**" as "compensation in the form of money for a person who claims to have suffered an injury." *Id.* The Policy further provides that CIC-VT has "the right and duty to defend a suit seeking **damages** which may be covered under the Commercial Liability Coverage." *Id.* at 7.

After the Underlying Action was commenced against TEC-SC, TEC-SC requested that CIC-VT defend and indemnify it in the Underlying Action. However, CIC-VT denied coverage on numerous grounds, including that the claims in the Underlying Action were not covered by the Policy. TEC-SC then filed the instant action against CIC-VT and CIC. TEC-SC's Complaint alleges three causes of action against the Defendants: (1) breach of contract; (2) insurance bad faith; and (3) declaratory judgment that Defendants have a duty to defend and indemnify TEC-SC in the Underlying Action.

CIC and CIC-VT filed separate motions to dismiss all claims. TEC-SC responded by filing a motion for summary judgment as to all claims. The parties agree that there are no factual disputes in this case and that the only disputed issues are questions of law to be determined by this Court. The motions have been fully briefed and are ripe for judgment.

---

[2] The words in bold are terms specifically defined in the Policy.

## JURISDICTION

This Court has subject matter jurisdiction over this matter based on 28 U.S.C. § 1332, as there is complete diversity of the parties and the amount in controversy exceeds $75,000. Plaintiff TEC-SC is an unincorporated association that maintains its principal place of business in Charleston, South Carolina. Defendant CIC-VT is a Vermont corporation with its principal place of business in Bennington, Vermont. Defendant CIC is a New York corporation with its principal place of business in New York, New York. Furthermore, this action concerns an insurance contract that provides a coverage limit of $1,000,000 for defense against, and payment of, claims for trademark infringement. Finally, Plaintiff asserts that it has spent over $75,000 to defend itself in the Underlying Action. Accordingly, the Court concludes that it has diversity jurisdiction over this matter.

## ANALYSIS

### I.     General Principles of South Carolina Contract Law

Because this action falls under the diversity jurisdiction granted to the federal courts by 28 U.S.C. § 1332, the Court looks to the law of South Carolina to determine the standards by which to evaluate the contract. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id.* The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id.* "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 348

(S.C. 1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." *Poston v. Nat'l Fid. Life Ins. Co.*, 399 S.E.2d 770, 772 (S.C. 1990).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *S.C. Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *M&M Corp. of S.C. v. Auto-Owners Ins. Co.*, 701 S.E.2d 33, 35 (S.C. 2010); *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

## II.     Defendants' Motions to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does

not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Moreover, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. The Supreme Court has explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. Thus, "[i]n ruling on a 12(b)(6) motion, a court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (internal quotations omitted). Furthermore, "a court may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic." *Id.*

### A. Defendant CIC's Motion to Dismiss

In its Motion to Dismiss, CIC argues that it is not a proper defendant in this action because the Complaint fails to allege any actionable conduct on the part of CIC. CIC asserts that it did not issue the Policy and thus cannot be liable for breach of contract or insurance bad faith, nor can Plaintiff prevail on the declaratory action against CIC.

The only allegation in the Complaint specifically addressing CIC is found in Paragraph 3, in which Plaintiff alleges that "Defendant Church Insurance Company is upon information and belief, an agent of Defendant Church Insurance Company of Vermont. Collectively, Defendants Church Insurance Company of Vermont and its agent Church Insurance Company are referred to herein as 'Insurance Company.'" Complaint ¶ 3, ECF 1. Plaintiff also alleges that the "Insurance Company" insured Plaintiff under the Policy, *id.* ¶ 6; that Plaintiff contacted "Insurance Company" to demand that it confirm coverage under the Policy and defend and indemnify Plaintiff in the Underlying Action, *id.* ¶ 11; that by letter dated August 29, 2013 ("Denial Letter"), the "Insurance Company" denied coverage under the Policy, *id.* ¶ 12; and that Plaintiff's claims arise from the "Insurance Company's" denial of coverage, *id.* ¶¶ 14, 31-41. Attached to Plaintiff's Complaint are the Policy and the Denial Letter, neither of which contain the name "Church Insurance Company." Instead, the name "Church Insurance Company of Vermont" appears in the headings of both the Policy and the Denial Letter, and the Denial Letter is signed by the Vice President of Claims for the Church Insurance Company of Vermont. In its response brief, Plaintiff contends that it communicated with CIC's representatives in procuring the insurance policy at issue and in requesting and ultimately being denied coverage thereunder. However, the Complaint does not contain any facts detailing Plaintiff's communications with CIC's representatives regarding the procurement of the Policy and the denial of coverage.

The Court concludes that, as to its claims against CIC, Plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Importantly, "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). The Complaint's lone allegation that CIC is an agent of CIC-VT is insufficient to allow the Court to draw the inference that CIC issued the Policy or had any contractual duty to defend Plaintiff in the Underlying Action. Thus, the Court concludes that Plaintiff's Complaint fails to state claims that CIC breached an insurance contract, acted in bad faith, or has a duty to defend and indemnify Plaintiff in the Underlying Action. Accordingly, the Court grants Defendant CIC's Motion to Dismiss under Rule 12(b)(6).[3]

### B. Defendant CIC-VT's Motion to Dismiss

Defendant CIC-VT moves to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. CIC-VT primarily argues that the complaint in the Underlying Action does not seek to recover "damages" within the purview of the Policy, and thus CIC-VT does not have a duty to defend Plaintiff in the Underlying Action. Accordingly, CIC-VT maintains that Plaintiff's Complaint fails to state a claim against CIC-VT because each cause of action in the Complaint is premised on CIC-VT's alleged duty to defend Plaintiff. Plaintiff responds that the Underlying Action does seek damages, as evidenced by the allegations of injury to the underlying plaintiffs' own intellectual property, by the request for attorneys' fees, and by the prayer for relief, which requests all available relief under the state trademark statute.

---

[3] Because the Court finds that the Complaint must be dismissed as against CIC pursuant to Rule 12(b)(6), the Court does not address whether the Complaint could also be dismissed as against CIC under Rule 12(b)(2).

According to Plaintiff, because S.C. Code Ann. § 39-15-1170 provides for monetary damages and attorneys' fees in addition to injunctive relief for violations of the trademark statute, the prayer for relief requests damages for the alleged trademark infringement. Plaintiff thus concludes that under the Policy, CIC-VT has a duty to defend and indemnify Plaintiff in the Underlying Action.

"An insurer's duty to defend is separate and distinct from its obligation to pay a judgment rendered against an insured." *BP Oil Co. v. Federated Mut. Ins. Co.*, 496 S.E.2d 35, 39 (S.C. Ct. App. 1998). Under South Carolina law, "an insurer's duty to defend is based on the allegations of the underlying complaint" and the terms of the policy. *B.L.G. Enters.*, 514 S.E.2d at 330. An insurer has no duty to defend where the facts alleged in the underlying complaint fail to bring a claim within the policy coverage or where the damage alleged was caused by a reason unambiguously excluded by the policy. *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 797 (S.C. 2008).

The parties agree that under the terms of the Policy, CIC-VT's duty to defend is triggered only where an underlying action "seek[s] damages which may be covered by the Commercial Liability Coverage." Commercial Liability Coverage 7. The Policy defines "damages" to mean "compensation in the form of money for a person who claims to have suffered an injury." *Id.* at 2. Thus, CIC-VT has a duty to defend Plaintiff in the Underlying Action only if the underlying complaint seeks monetary compensation for a person who claims to have suffered an injury that is covered by the Commercial Liability Coverage.

The complaint in the Underlying Action alleges three causes of action. The first cause of action is not relevant to the instant case because it asserts a claim against TEC only. The third cause of action also is irrelevant because it seeks relief under statutes that provide for criminal

penalties and injunctive relief only. Thus, the Court must look to the second cause of action in the underlying complaint to determine if the Underlying Action seeks damages against TEC-SC:

### SECOND CAUSE OF ACTION
### (Service Mark Infringement, [S.C.] Code of Laws §§ 39-15-1105, *et seq.*)

495. Plaintiffs incorporate by reference paragraphs 1-494.

496. Defendants, and those acting under its direction and control, without the consent of the Plaintiffs, have used and caused to be used the registered service marks of Plaintiffs in the connection with their services and have used reproductions, copies or imitations of Plaintiffs' registered service marks which is likely to, and has, caused confusion, mistake and deception in that it has done so falsely claiming to be, or have the consent of, Plaintiffs.

497. Defendants and those acting under their direction and control have committed the acts alleged with the intent to cause confusion, mistake or to deceive.

498. The registered service marks of the Plaintiffs are famous within the meaning of § 39-15-1165, South Carolina Code of Laws (1976).

499. *The Plaintiffs are entitled to* temporary and permanent injunctions prohibiting Defendants and those acting under their direction and control from using the registered service marks, requiring the return of all the counterfeit or imitation service marks to an officer of the Court or to the Plaintiffs for their destruction, and for *such reasonable attorney's fees as may be determined by the Court all as provided by § 39-15-1170* of the South Carolina Code of Laws (1976).

Underlying Complaint ¶¶ 495-499, ECF 1-2 (emphasis added).

The second cause of action explicitly seeks temporary and permanent injunctions, the return of all counterfeit or imitation service marks for their destruction, and reasonable attorneys' fees. It does not explicitly allege damages in the traditional meaning of the term. *See Ellett Bros., Inc. v. U.S. Fidelity & Guar. Co.*, 275 F.3d 384, 387 (4th Cir. 2001) (discussing "a default rule of contract interpretation whereby, in the absence of any contrary intent by the parties, the term 'damages' in insurance contracts will be interpreted [as legal damages only] so as not to

reference equitable relief"). However, the Court need not apply the *Ellett Bros.* default rule of interpretation because, unlike the policy in *Ellett Bros.*, the instant Policy explicitly defines "damages." Pursuant to the unambiguous terms of the Policy, "damages" means "compensation in the form of money for a person who claims to have suffered an injury." Commercial Liability Coverage 2. Thus, "damages," as defined in the Policy, includes any monetary compensation for a person who claims to be injured. Attorneys' fees are monetary compensation, and the plaintiffs in the Underlying Action who seek the attorneys' fees claim that they suffered an injury by Plaintiff's alleged trademark infringement. Accordingly, the Court concludes that the Underlying Action seeks "damages" as defined by the Policy.

CIC-VT has a duty to defend Plaintiff in the Underlying Action if the underlying complaint alleges an injury that is covered by the Commercial Liability Coverage. Coverage P provides that CIC-VT will "pay all sums which [TEC-SC] becomes legally obligated to pay as **damages** due to . . . **advertising injury** to which this insurance applies . . . [including] **advertising injury** arising out of an offense committed in the course of advertising **your** goods, products, or services." *Id.* at 5. The second cause of action in the underlying complaint alleges that the plaintiffs in the Underlying Action were injured by TEC-SC's alleged use of their registered service marks in the course of advertising TEC-SC's services. Accordingly, the Court concludes that the Underlying Action alleges an advertising injury as defined in the Policy.

CIC-VT argues that even if damages are alleged in the underlying complaint, there still is no coverage under the Policy because the intentional and false acts alleged in the second cause of action are specifically excluded by the unambiguous terms of the Policy. The Commercial Liability Coverage provides the following relevant exclusions:

> 1. **We** do not pay for **personal** or **advertising injury** arising out of willful violation of an ordinance, statute, or regulation by an **insured** or with the **insured's** consent.
>
> 2. **We** do not pay for **personal** or **advertising injury** arising out of: a. oral or written publication of material done by or at the direction of an **insured** who knew it was false; or b. oral or written publication of the same or similar material by or on behalf of an **insured** that took place prior to the policy.

*Id.* at 10. CIC-VT contends that the underlying court can award attorneys' fees to the underlying plaintiffs only upon a finding that Plaintiff intentionally committed the wrongful acts. The Court disagrees.

> Section 39-15-1170 provides, in pertinent part:
>
> An owner of a mark registered under this article may bring an action to enjoin the manufacture, use, display, or sale of a counterfeit or imitation of the registered mark, and a court of competent jurisdiction may grant an injunction to restrain the manufacture, use, display, or sale as the court considers just and reasonable and may require a defendant to pay the owner profits derived from or damages suffered due to the wrongful manufacture, use, display, or sale or to pay both profits and damages. The court also may order that the counterfeit or imitation in the possession or under the control of a defendant be delivered to an officer of the court or to the complainant to be destroyed. *The court in its discretion may enter judgment for* an amount not to exceed three times the profits and damages or *reasonable attorneys' fees of the prevailing party*, or both, *in cases where the court finds the other party committed the wrongful acts with knowledge or in bad faith or otherwise according to the circumstances of the case*.

S.C. Code Ann. § 39-15-1170(A) (emphasis added). As CIC-VT argues, this statute permits the state court to award attorneys' fees upon finding that the other party committed the wrongful acts with knowledge or in bad faith. However, the court may also award attorneys' fees for an otherwise unspecified reason "according to the circumstances of the case." Although this Court has neither located nor been directed to any case law interpreting the meaning of "otherwise according to the circumstances of the case," it is clear that the statute contemplates an award of attorneys' fees based on some reason other than that a party committed the wrongful act with

12

knowledge or in bad faith. Accordingly, this Court cannot say that the allegations in the underlying complaint clearly fall within one of the Policy's exclusions.[4]

In conclusion, the Court finds that Plaintiff's Complaint contains sufficient allegations to state a claim to relief that is plausible on its face. The Complaint alleges that CIC-VT has a duty, under the Policy, to defend and indemnify Plaintiff in the Underlying Action. The Complaint further alleges sufficient facts to state claims that CIC-VT breached its contract with Plaintiff and acted in bad faith when it denied coverage. Upon review of the Policy and the underlying complaint, the Court finds that CIC-VT has a duty to defend Plaintiff in the Underlying Action because the underlying complaint alleges both an "advertising injury," as defined by the Policy, and attorneys' fees, which fall within the Policy's definition of "damages." Accordingly, the Court denies CIC-VT's Motion to Dismiss the Complaint pursuant to Rule 12(b)(6).

### III.     Plaintiff TEC-SC's Motion for Summary Judgment

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No.*

---

[4] CIC-VT makes an alternative argument that coverage is barred by the Episcopal Entities/Doctrinal Disputes Exclusion Endorsement, which excludes from coverage any doctrinal dispute between Episcopal entities as to the ownership, management, or control of any property by one entity against another. However, this exclusion does not apply to the Policy's Commercial Liability Coverage. Instead, it applies to the Directors and Officers Liability and Entity Liability Coverage and to the Commercial Umbrella/Excess Liability Coverage. It is undisputed that Plaintiff is seeking coverage under the Commercial Liability Coverage and not under these alternate coverages. Thus, these exclusions do not bar coverage for the Underlying Action.

*83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).  Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

**A.  Third Cause of Action: Declaratory Judgment**

A federal court's power to issue a declaratory judgment emanates from 28 U.S.C. § 2201, which provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

Plaintiff asks the Court to declare that CIC-VT has a duty under the Policy to defend Plaintiff in the Underlying Action.  As discussed more fully above in Section II.B, under the terms of the Policy, CIC-VT has a duty to defend Plaintiff in the Underlying Action only if the underlying complaint seeks monetary compensation for a person who claims to have suffered an injury that is covered by the Commercial Liability Coverage.  The Underlying Action seeks attorneys' fees, which are a form of monetary compensation.  Moreover, the underlying plaintiffs who seek the attorneys' fees claim to have suffered an injury by Plaintiff's alleged use of their registered service marks in the course of advertising TEC-SC's services.  The Court concludes that the Underlying Action thus alleges an "advertising injury" as defined in the Policy and seeks "damages" as defined in the Policy (i.e., monetary compensation in the form of attorneys' fees). Accordingly, CIC-VT has a duty to defend Plaintiff because the underlying complaint seeks monetary compensation (attorneys' fees) for a person who claims to have suffered an injury that is covered by the Commercial Liability Coverage (an advertising injury).  Moreover, as

14

discussed above, the claims in the underlying complaint are not unambiguously excluded from coverage by the terms of the Policy because the state court could potentially award attorneys' fees without concluding that Plaintiff acted with knowledge or intent. Therefore, the Court declares that, pursuant to the unambiguous terms of the Policy, CIC-VT has a duty to defend Plaintiff in the Underlying Action.

### B. First Cause of Action: Breach of Contract

To establish its claim for breach of contract, TEC-SC must show (1) the existence of a contract, (2) its breach, and (3) the damages caused by such breach. *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009). "Where an insurer refuses to undertake the defense of an action against the insured based upon a claim within the coverage of the insurance policy, it thereby breaches the contract of insurance and is liable to the insured for all damages resulting to such insured as a direct result of such refusal and breach." *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (1962). The Policy issued by CIC-VT satisfies the first element of the breach-of-contract claim. As discussed above, although CIC-VT had a duty to defend TEC-SC in the Underlying Action, it refused to undertake that defense. Thus, the second element has been established. Finally, the Court finds that there is no dispute that Plaintiff has been damaged by having to defend itself in the Underlying Action, as described in paragraph 30 of the Complaint. Accordingly, the Court grants Plaintiff summary judgment as to its first cause of action for breach of contract.

### C. Second Cause of Action: Insurance Bad Faith

Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything to impair the right of the other to receive the benefits of the agreement. *Nichols v. State Farm Mut. Auto. Ins. Co.*, 306 S.E.2d 616, 618 (S.C. 1983). An insurer breaches

this covenant of good faith implied within the insurance contract if the following elements are met: (1) the existence of a contract of insurance between the parties; (2) a refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured. *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396-97 (S.C. 1992). "If the insured proves the insurer's conduct was willful or in reckless disregard of his rights under the contract, the insured also may recover punitive damages." *Id.* at 397. Generally, under South Carolina law, an "insured may recover damages for a bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." *Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996). Stated differently, if there is an objectively reasonable ground for contesting an insurance claim, there is no bad faith in the denial of it. *Mixson, Inc. v. Am. Loyalty Ins. Co.*, 562 S.E.2d 659, 661 (S.C. Ct. App. 2002). "Whether such an objectively reasonable basis for denial exists depends on the circumstances existing at the time of the denial." *State Farm Fire & Cas. Co. v. Barton*, 897 F.2d 729, 731 (4th Cir. 1990) (interpreting South Carolina law).

Plaintiff has established the first, second, and fourth elements of its bad faith claim. However, the Court concludes that Plaintiff has not presented sufficient evidence to establish that CIC-VT's refusal to defend was an unreasonable action or made in bad faith. The parties' briefing does not squarely address the reasonableness of CIC-VT's action, and the Court will not speculate on this record as to whether or not CIC-VT had a reasonable basis for refusing to defend Plaintiff in the Underlying Action. Accordingly, the Court denies summary judgment as to Plaintiff's claim for insurance bad faith.

In conclusion, the Court declares that CIC-VT has a duty to defend Plaintiff in the Underlying Action. The Court grants summary judgment in favor of Plaintiff on its breach-of-contract claim against CIC-VT but denies summary judgment on Plaintiff's bad-faith claim.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that CIC's Motion to Dismiss is **GRANTED** and that Defendant CIC-VT's Motion to Dismiss is **DENIED**. It is further **ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**AND IT IS SO ORDERED.**

*/s/ Patrick Michael Duffy*
PATRICK MICHAEL DUFFY
United States District Judge

**January 6, 2014**
**Charleston, SC**